UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

**BETH GARMON**
    Plaintiff

**v.**                                                        **No. 1:08CV-00171-J**

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant

**MAGISTRATE JUDGE'S REPORT**
**and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Charles Richard Burchett. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 9 and 10, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on July 23, 2007, by administrative law judge (ALJ) Roger Reynolds. In support of his decision denying Title II and Title XVI benefits, Judge Reynolds entered the following numbered findings:

1. The claimant met the insured status requirements of the Social Security Act through June 30, 2004.

2. The claimant may have engaged in substantial gainful activity after November 15, 1999, the alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3. The claimant has the following severe impairments: mild obesity; fibromyalgia; low back pain secondary to degenerative disc disease of lumbar spine; dysthymia; and anxiety disorder, not otherwise specified (20 CFR 404.1520(c) and 416.920(c)).

      4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

      5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a restricted range of light and sedentary work within these parameters.... The claimant can engage in no climbing of ropes, ladders or scaffolds; no work at heights or around industrial hazards; occasional bending, twisting, stooping, kneeling, crouching or crawling; occasional operation of foot pedal controls. She requires entry level work with simple 1-2-3 step procedures, no frequent changes in work routines, no requirement for problem solving, independent planning or the setting of goals, and no frequent interaction with the general public.

      6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

      7. The claimant was born on September 27, 1973 and was 26 years old (she is presently 33 years old), which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

      8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

      9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

      10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

      11. The claimant has not been under a disability, as defined in the Social Security Act, from November 15, 1999 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Administrative Record (AR), pp. 26-33).

**Governing Legal Standards**

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act. The determination of disability is essentially the same for Title II and Title XVI purposes.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a <u>de minimis</u>, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the

so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). The focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

### Discussion

This case was denied at the fifth and final step of the sequential evaluation process based upon testimony from a vocational expert (VE). The VE testified that an individual with the limitations stated in the ALJ's Finding No. 5 would retain the ability to perform a significant number of jobs in the national economy. Unless the plaintiff points the court to evidence in the administrative record that she suffers from an additional, vocationally significant physical or mental restriction, which the ALJ was obliged to accept, the court should affirm the denial decision in light

of the vocational testimony.  See *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).  The plaintiff has identified no such limitation.  Therefore, we shall recommend an affirmance of the Commissioner's final decision.  The plaintiff's specific contentions shall be considered in turn.

The plaintiff's principal contention upon judicial review is that the ALJ was required to accept the limitations assigned by her treating psychiatrist, Max Kinnaman.  Dr. Kinnaman began treating the plaintiff in October of 2004, following a suicide gesture in which the plaintiff took an overdose of prescription medication.  She was observed overnight at the Cumberland County Hospital, but a stomach pump was not deemed necessary.  On March 4, 2005, counsel took Dr. Kinnaman's unsigned, unsworn statement.  A transcript of the statement is at AR, pp. 472-477.  Among other things, Dr. Kinnaman opined that the plaintiff's severe depression was situational due to a recent divorce from an abusive alcoholic spouse and the presence of three minor children solely in her care.  However, Dr. Kinnaman opined that the depression would likely be of longstanding if not lifelong duration.  Contemporaneously with this statement, Dr. Kinnaman completed the standard mental assessment form (AR, pp. 449-450).  Among other things, Dr. Kinnaman opined that the plaintiff's ability to function in 9 out of 15 areas is "poor or none."

To be disabling, an impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509 and 416.909.  In his first written decision in this case, the ALJ rejected Dr. Kinnaman's findings for the following reasons (AR, p. 56):

> This gloomy prognosis [of lifelong depression] is not accepted: the Administrative Law Judge notes, inter alia, that by definition a situational depression is incompatible with a prognosis of lifelong depression.  It appears that her depression is situational and is related to divorce and the fact that she has three minor children solely in her care.

Following a remand by the Appeals Council, Dr. Kinnaman testified at a subsequent administrative hearing on March 12, 2007 (AR, pp. 582-607). Dr. Kinnaman persisted in his "gloomy prognosis" of severe depression. However, Dr. Kinnaman conceded that the depression might improve in about 16 years when the youngest child, then five years old, moves out of the house (AR, p. 591). In the Commissioner's final decision herein, the ALJ again rejected Dr. Kinnaman's opinions of extreme mental limitations for many years to come for the following reasons (AR, pp. 30-31):

> The Administrative Law Judge notes the claimant has experienced an alcoholic, drug-abusing husband, a deteriorating marriage, a separation, a reconciliation, separation, decision to divorce, angry divorce issues, and money problems in the last three years – all of these are depression/anxiety producing events, but they are primarily <u>situational</u> stressors that are slowly resolving. The claimant now has a stable money source in the oil well assignments (she gets $4,000.00 a month from various oil wells her ex-husband owns) – the divorce is now final. The Administrative Law Judge further notes these life stressors are not, however, <u>permanently disabling</u>.
>
> ...
> Dr. Kinnaman's assessments have been rejected for reasons generally articulated in the Administrative Law Judge's prior decision. Repeated efforts (including via subpoena) to obtain treatment records from Dr. Kinnaman having been rebuffed, the record may have been deprived of evidence potentially supportive or corroborative of his otherwise undocumented opinions, leading to the conclusion those must represent "compassionate advocacy" on his patient's behalf.

As indicated above, to be disabling, an impairment must satisfy the so-called durational requirement. The requirement may be considered as a two-pronged test, i.e., the impairment 1) must have lasted for a continuous period of at least 12 months, or 2) it must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509 and 416.909. With respect to the second prong, the magistrate judge concludes that the ALJ identified a substantial basis for declining to accept the degree of prospective mental limitations opined by Dr. Kinnaman.

As to the first prong of the test, the issue is whether substantial evidence supports the ALJ's implicit finding that the plaintiff did not suffer from a disabling mental impairment at any time during the closed period between November 15, 1999, when she alleges she became disabled, and June 30, 2004, when her insured status for Title II benefits expired. As indicated above, Dr. Kinnaman did not begin treating the plaintiff until October of 2004. At the hearing, counsel asked Dr. Kinnaman to opine about "how longstanding [the plaintiff's] problems [were] at the time that you first saw her" (AR, p. 605). Dr. Kinnaman offered no opinion, stating simply that the plaintiff's family physician, Dr. Rice, "had treated her [for depression] for several months" prior to October of 2004.

The magistrate judge concludes that the plaintiff has failed to identify any probative evidence of a disabling mental impairment during the closed period. On the contrary, the evidence reflects that the plaintiff was not disabled during that period. In May of 2003, the plaintiff was examined by clinical psychologist Steve Webne, Ph.D. (AR, pp. 217-222). Based upon Dr. Webne's narrative report and the record as a whole, the state agency program psychologist, Lea Perritt, Ph.D., completed the standard mental assessment form finding, at most, "moderate" limitations in any functional area (AR, pp. 237-238).

Next, the plaintiff argues that the ALJ erred in characterizing her mental impairment as "dysthymia; and anxiety disorder, not otherwise specified" (Finding No. 3) as opposed to the "major depressive disorder" diagnosed by Dr. Kinnaman. The magistrate judge concludes that it is the limitations caused by an impairment, not the label placed upon the impairment, that is of controlling significance upon judicial review. The ALJ's characterization of the plaintiff's mental impairment was, at worst, harmless error.

The plaintiff argues that "substantial evidence does not support the ALJ's conclusion that the plaintiff's psychiatric impairments are slowly resolving" (Docket Entry No. 9, p. 5). The magistrate judge concludes that the ALJ did not find that the plaintiff's psychiatric impairments are slowly resolving. Rather, he found that her "situational stressors ... are slowly resolving" (AR, p. 30). On July 23, 2006, when he rendered his decision, the ALJ was called upon to determine whether the plaintiff's situational stressors would be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509 and 416.909. The ALJ's negative determination in this regard was reasonable and supportable in light of the medical and non-medical evidence as a whole.

Next, the plaintiff argues in passing that she "disagrees with the assertion [in ALJ's Finding No. 2] that the work activity constitutes substantial gainful activity" (Docket Entry No. 9, p. 2). Because this case was denied at the fifth and final, not the first, step of the sequential evaluation process, the magistrate judge concludes that any error was harmless.

The plaintiff argues that "Dr. Kinnaman mentioned that the claimant's major depression meets a medical listing and the analysis should be further discussed by the ALJ on remand" (Docket Entry No. 9, p. 4). In his statement on March 4, 2005, Dr. Kinnaman opined as follows (AR, p. 475):

> I believe and it's my opinion that this is an individual who more than meets the Social Security listing 12.04 for an affective disorder and that illness has been in place for the duration at or exceeding the twelve months required under the listing.

"Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart, ..., the final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2). At Finding No. 4, the ALJ found that the plaintiff

9

does not have an impairment that meets or equals the Listing. The magistrate judge concludes that the ALJ was not required to defer to Dr. Kinnaman's conclusory assertion that the plaintiff's condition satisfied the criteria of Listing § 12.04. To adopt the conclusory statement by Dr. Kinnaman would result in an intrusion into the province of the Commissioner.

The plaintiff's final argument is that "the ALJ failed to follow the Appeals Council directive of re-contacting treating sources for clarification" (Docket Entry No. 9, p. 10). In this case, Dr. Kinnaman testified at a subsequent administrative hearing. The magistrate judge concludes that the ALJ adequately complied with the Appeals Council's order to recontact the treating sources for clarification "if necessary" (AR, p. 504). In any event, the plaintiff's contention is not cognizable herein. On September 26, 2008, the appeals Council declined to review the ALJ's decision dated July 23, 2007 (AR, p. 12). When the Appeals Council declines to review an ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision as contemplated by 42 U.S.C. § 405(g). See *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993). Judicial review is limited to a review of the "final decision" of the Commissioner as contemplated by section 405(g). In declining to disturb the ALJ's most recent decision, the Appeals Council implicitly found that the ALJ adequately complied with its prior instructions. This court is not in a position to second guess the Appeals Council on the matter.

## RECOMMENDATION

The magistrate judge RECOMMENDS that the final decision of the Commissioner be AFFIRMED and that the plaintiff's complaint be DISMISSED.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).